UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JUANITA L. HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-67 |
| | § | |
| VANDERBILT MORTGAGE AND | § | |
| FINANCE, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendants CMH Homes, Inc. ("CMH"), Clayton Homes, Inc. ("Clayton") (collectively "Clayton Defendants"), and Vanderbilt Mortgage and Finance, Inc.'s ("Vanderbilt"), Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e) and for a RICO Case Statement ("Rule 12(b)(6) or Rule 12(e) Motion") (D.E. 5, 13)) and Defendant Clayton's Motion to Dismiss for Lack of Personal Jurisdiction ("Rule 12(b)(2) Motion") (D.E. 12). For the reasons stated below, the Court DENIES Clayton's Rule 12(b)(2) Motion (D.E. 12), DENIES IN PART and GRANTS IN PART Defendants' Rule 12(b)(6) or Rule 12(e) Motion without prejudice (D.E. 5, 13), and ORDERS Plaintiff to file an amended pleading that complies with the requirements of Rule 9(b) and Rule 8(a) by April 28, 2010.

**I.    Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question, as Plaintiff brings a cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, diversity of citizenship, as Plaintiff

and Defendants are citizens of different states and the amount in controversy exceeds $ 75,000. (D.E. 1 at 7-8, 16-17.)

## II.     Factual Background

The following factual background is derived from Plaintiff's Original Complaint (D.E. 1) and Plaintiff's representations at the initial pretrial conference and does not represent the Court's factual findings in this matter.

This cause of action arises out of Defendants' alleged widespread scheme to sell manufactured homes via "land in lieu transactions," wherein they would enter into contracts with individuals for the sale of manufactured homes, but would often use as collateral land owned by someone other than the individual purchasing the manufactured home in question.  In this scheme, the Clayton Homes Defendants would allegedly forge deeds and falsely notarize documents to make it appear that landowners signed over to Defendants an interest in their property as collateral for the purchase of the manufactured home. Clayton Homes allegedly paid its employees to become notaries, but provided no training and encouraged employees to notarize documents in which they had a financial interest.  (D.E. 1 at 2-3.)

Plaintiff Juanita L. Hernandez purchased a manufactured home from Defendants. Plaintiff alleges that, on or about October 25, 2000, Defendants filed documents with the Jim Wells County, Texas Clerk's office that fraudulently conveyed ownership and/or interest in land situated in Jim Wells County, representing that Defendants had a valid lien, interest, or ownership in that property.  Defendants did not disclose to the property owner that these fraudulent documents were filed, and instead instructed the Clerk to return the fraudulent documents back to Clayton rather than the landowner.  (D.E. 1 at 1.)  Clayton Homes CEO Kevin Clayton was named as trustee on the Deed of Trust.  Clayton allegedly encouraged the

sale of manufactured homes at any cost to insure a profit. (D.E. 1 at 2.)

Plaintiff alleges that the fraudulent transactions were completed at the Clayton Homes sales center, rather than an independent title company, which allowed Defendants to continue their fraudulent activity. Plaintiff further alleges that Defendants were able to conduct business in this manner because Vanderbilt, the lender, was part of the criminal enterprise. (D.E. 1 at 3-4.)

Plaintiff states that Defendants' fraud was uncovered in litigation from 2003 to 2005. In this litigation, Defendants' employees testified that they forged customer signatures, forged notary signatures, and even forged dead people's signatures on many documents. Plaintiff contends that, when this evidence came to light, Defendants entered into confidential settlements with only those customers who discovered the fraud. Defendants believed that there were thousands of other customers who had not discovered the fraud. Rather than notify these other customers, they filed deed releases in dozens of Texas counties releasing installment contracts as "paid in full," but without informing the customers. Despite filing the releases, Defendants allegedly continued to collect payments on debts no longer due. Fraud victims exist in dozens of Texas counties, according to Plaintiff. Plaintiff alleges that the secret releases were filed as part of a criminal and fraudulent enterprise created to cover up fraud and alter government documents. (D.E. 1 at 4-5.)

Plaintiff alleges that many of the loans at issue were sold to the Federal National Mortgage Association, or Fannie Mae, for hundreds of millions of dollars without disclosing the fraud and forgery involved in the transactions and without disclosing that the collateral used to secure the loans had been released. Plaintiff states that Berkshire Hathaway, the parent company of the Defendants, owned a percentage of Fannie Mae at the time. Plaintiff further alleges that Berkshire Hathaway knew the loans sold to Fannie Mae were based upon fraudulent transactions

and knew that the loans were no longer secured by real property, but never disclosed this knowledge to Fannie Mae. (D.E. 1 at 6.) Plaintiff alleges that Defendants Clayton, CMH, and Vanderbilt operate as a single business enterprise involved in the producing, selling, marketing, financing, and insuring of manufactured homes. (D.E. 1 at 6-7.)

At the time of the alleged commission of the fraud described above, Plaintiff states that John Wells was the manager of the Corpus Christi store where the fraud was occurring. He was also a business partner of Clayton and CMH. As a partner, Wells had the authority to fire employees and make business decisions for the benefit of the rest of his partners. He knew about the fraud but did nothing to stop it, and rather assisted in it. (D.E. 1 at 7.)

Plaintiff states the following causes of action: (1) violation of Section 12.002 of the Texas Civil Practice and Remedies Code (filing fraudulent documents related to land), (2) common law unfair debt collection, (3) violation of the Texas Debt Collection Practices Act, (4) fraud, (5) civil conspiracy, and (6) RICO violations. (D.E. 1 at 9-16.) Plaintiff seeks actual and punitive damages, along with attorneys' fees. (D.E. 1 at 16.)

### III.   Procedural Background

Plaintiff filed her Original Complaint in this action on March 2, 2010. On April 5, 2010, Defendants Vanderbilt and CMH filed the Rule 12(b)(6) or Rule 12(e) Motion. (D.E. 5.) Thereafter, on April 13, 2010, Defendant Clayton filed its Rule 12(b)(2) Motion (D.E. 12), and separately filed its own Rule 12(b)(6) or Rule 12(e) Motion, which joined in the earlier Rule 12(b)(6) or Rule 12(e) Motion filed by CMH and Vanderbilt. (D.E. 13.)

### IV.   Discussion

In this Order, the Court addresses both the Rule 12(b)(2) Motion and the Rule 12(b)(6) or 12(e) Motion. As jurisdictional matters must be resolved first, the Court first turns to the Rule

12(b)(2) Motion. See, e.g., United States v. Texas Tech University, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("[C]ourts must . . . decide issues of personal jurisdiction before ruling on the merits.").

    **A.**    **Clayton Homes' Rule 12(b)(2) Motion (D.E. 12)**

        **1.**    **Rule 12(b)(2) Standard**

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." Luv N' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).

        **2.**    **Personal Jurisdiction Over RICO Claims**

In its Rule 12(b)(2) Motion, Clayton argues that this Court has no basis upon which to exercise personal jurisdiction over it. Clayton first contends, in effect, that the Court should not apply Fifth Circuit precedent providing for nationwide personal jurisdiction in cases brought under a statute, such as RICO, providing for nationwide service of process. (D.E. 12 at 1, 2-5.) Defendant then argues that it lacks sufficient minimum contacts with the State of Texas to allow for the exercise of personal jurisdiction over it. Defendant claims that it is essentially a holding company incorporated in Delaware that does not actively engage in commerce, has no employees in Texas, does not pay taxes in Texas, is not authorized to conduct business in Texas, and has never interacted with Plaintiff. Defendant therefore contends that there is no basis for specific or general personal jurisdiction in this Court. (D.E. 12 at 1, 5-13.)

### a. Minimum Contacts with the United States

Although personal jurisdiction is generally established based upon a defendant's minimum contacts with a particular state, there are exceptions to this rule. One such exception applies in cases brought under federal statutes providing for nationwide service of process, as the Fifth Circuit has explained. In <u>Busch v. Buchman, Buchman & O'Brien</u>, 11 F.3d 1255 (5th Cir. 1994), a lawsuit brought under the 1934 Securities Exchange Act, 15 U.S.C. § 78a <u>et seq.</u>, the court concluded that a federal district court in Texas had personal jurisdiction over a New York defendant. The court explained, "[i]n cases where a state is attempting to get extraterritorial jurisdiction over a defendant, the inquiry is whether the defendant has had minimum contacts with the state. **And, when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States**." <u>Id.</u> at 1258 (emphasis added). While a subsequent Fifth Circuit panel in <u>Bellaire General Hospital v. Blue Cross Blue Shield of Michigan</u>, 97 F.3d 822 (5th Cir. 1996) questioned the nationwide service of process holding in <u>Busch</u>,[1] this Court is bound by <u>Busch</u>. In the Fifth Circuit, "one panel may not overrule the decision, right or wrong, of a prior panel in the absence of an intervening contrary or superseding decision by the court en banc or the Supreme Court." <u>Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.</u>, 597 F.3d 330, 334 n.4 (5th Cir. 2010). As there is no intervening Supreme Court or Fifth Circuit en banc decision, the <u>Busch</u> decision controls. Thus, in any suit brought under a statute providing for

---

[1] In <u>Bellaire</u>, the court applied <u>Busch</u>, but noted its disagreement. The court stated, "[a]lthough we dutifully apply <u>Busch</u>, we emphasize our disagreement with it to the extent it concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign. We view personal jurisdiction and service of process as conceptually distinct issues. We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions." 97 F.3d at 826 (internal citations omitted). The decision also cites Judge Garza's dissenting opinion in <u>Busch</u>. <u>Id.</u>

nationwide service of process, a court need only conclude that Defendant has sufficient minimum contacts with the United States as a whole, not with any state in particular. Busch, 11 F.3d at 1258.

In light of Busch, the next question is whether RICO in fact provides for nationwide service of process, and thus allows for the exercise of personal jurisdiction based upon a defendant's minimum contacts with the United States as a whole. The service of process provision of RICO, 18 U.S.C. § 1965, provides:

> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.
>
> . . .
>
> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(b), (d). Although the Fifth Circuit has not expressly decided this issue, many courts within this Circuit and elsewhere have concluded that RICO provides for nationwide service of process. See, e.g., David v. Signal Intern., LLC, 588 F. Supp. 2d 718, 727 (E.D. La. 2008) ("RICO has a special nationwide service of process provision."); Oblio Telecom, Inc. v. Patel, __ F. Supp. 2d __, 2008 WL 4936488, at *4 (N.D. Tex. Nov 18, 2008) (RICO "does provide for nationwide service of process."); Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 782 (N.D. Tex. 2008) ("[T]he ends of justice require application of § 1965(b)'s nationwide service of process provision."); Paolino v. Argyll Equities, L.L.C., 401 F. Supp. 2d 712, 716 (W.D. Tex. 2005) ("[P]ursuant to 18 U.S.C. § 1965(b), RICO's nationwide service of process provision, the ends of justice require that the other parties be brought before this Court."); see

also Cory v. Aztec Steel Building, Inc., 468 F.3d 1226, 1230 (10th Cir. 2006); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998); Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 538-39 (9th Cir. 1986); Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671-72 (7th Cir. 1987). Consistent with these decisions, and the language of Section 1965(b) and (d), allowing for service in "any district court," or "any judicial district," the Court concludes that RICO provides for nationwide service of process.

Therefore, consistent with Busch, the Court must look only to whether Defendant Clayton has sufficient minimum contacts with the United States as a whole. 11 F.3d at 1258. There is no dispute that it has such contacts. (D.E. 12 at 7 ("CHI is a Delaware corporation with its principal place of business in Delaware . . . .").) As such, the Court must conclude that it has personal jurisdiction over Defendant Clayton, based upon the nationwide minimum contacts analysis applicable in RICO cases.

### b. Due Process Considerations

Despite this Court's obligation to apply Busch, Defendant argues that Section 1965 allows for the Court to exercise jurisdiction over it only if "it is shown that the ends of justice require [it]." (D.E. 12 at 3.) The "ends of justice," according to Defendant, is similar to "the broad notions of substantial justice and fair play." (D.E. 12 at 3 (citing Allstate Ins. Co. v. Plambeck, D.C., 2009 WL 347423, at *3).) In this case, Defendant argues that this Court's assertion of personal jurisdiction over it would "offend these traditional notions of fair play because . . . CHI has no specific nexus with Plaintiff or her claims, and no general nexus with the State of Texas." (D.E. 12 at 4.) Defendant concludes that "[t]he exercise of personal jurisdiction over an entity that has never actively engaged in business in Texas would offend traditional

notions of fair play and substantial justice." (D.E. 12 at 4.)

Under well established Supreme Court precedent, concepts of "fair play" and "substantial justice" are essentially part of the due process analysis. See <u>Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County</u>, 480 U.S. 102, 113 (1987) ("The strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over Asahi under circumstances that would offend "'traditional notions of fair play and substantial justice.'"); <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 464 (1985) ("The question presented is whether this exercise of long-arm jurisdiction offended 'traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment."). Thus, the question is whether exercise of personal jurisdiction in this case would comport with due process considerations.

Defendants are correct that "the expansive minimum contacts test under a nationwide service of process provision does not obviate due process concerns." <u>Rolls-Royce Corp. v. Heros, Inc.</u>, 576 F. Supp. 2d 765, 782 (N.D. Tex. 2008). Nevertheless, as the Fifth Circuit in <u>Busch</u> explained, "while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test." 11 F.3d at 1258. The <u>Busch</u> court concluded that due process considerations were satisfied in a nationwide service of process statute, stating, "[g]iven that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States." <u>Id</u>.; <u>see also, e.g.</u>, <u>IBEW-NECA Southwestern Health and Benefit Fund v. Tafoya</u>, 2001 WL 1042733, at *3 (N.D. Tex. Aug. 21, 2001) ("Under the <u>Busch</u> standard, [defendant's] United States residency eliminates any due process concerns. Further, applying the <u>Busch</u> standard to [defendant] does

not offend traditional notions of fair play and substantial justice."); S.E.C. v. Cook, 2001 WL 896923, at *2 (N.D. Tex. Aug. 2, 2001) ("[I]f the relevant sovereign is the United States, it does not offend the traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing in the United States. . . . Under the Busch rationale, [defendant's] United States residency destroys any due process concerns, and the traditional notions of fair play and substantial justice will not be offended by this Court's exercise of personal jurisdiction."). In light of Busch, the Court concludes that due process considerations involved with the exercise of personal jurisdiction over Clayton are satisfied when jurisdiction is based upon nationwide minimum contacts.

As the Court need only conclude that Defendant Clayton has sufficient minimum contacts with the United States, it need not consider Defendant's arguments regarding its lack of minimum contacts with the State of Texas. (D.E. 12 at 5-13.) The Court concludes that it has personal jurisdiction over Defendant Clayton, on the basis of Plaintiff's RICO claims.

### 3. Pendent Personal Jurisdiction Over Non-RICO Claims

Having concluded that the Court has personal jurisdiction over Defendant Clayton on the basis of the RICO cause of action, the Court must next determine whether it has personal jurisdiction with respect to Plaintiff's other claims, namely Section 12.002 of the Texas Civil Practice and Remedies Code, common law unfair debt collection, Texas Debt Collection Practices Act, common law fraud, and civil conspiracy (the "non-RICO claims").

The Court's personal jurisdiction over Plaintiff's non-RICO claims is governed by the principle of pendent personal jurisdiction. As one court has recently explained, pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that

arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (citing United States v. Botefuhr, 309 F.3d 1263, 1272-73 (10th Cir. 2002)); see also Conwill v. Greenberg Traurig, L.L.P., 2009 WL 5178310, at *8 (E.D. La. Dec. 22, 2009) (discussing pendent personal jurisdiction); Pinnacle Label, Inc. v. Spinnaker Coating, LLC, 2009 WL 3805798, at *6 (N.D. Tex. Nov. 12, 2009) (same). In other words, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. A defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance." Rolls-Royce Corp., 576 F. Supp. 2d at 783 (internal citations omitted).

Although the Fifth Circuit has not yet expressly ruled on pendent personal jurisdiction, other circuits to consider the issue have uniformly approved pendent personal jurisdiction. See, e.g., Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004); Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George, 223 F.3d 445, 449-50 (7th Cir. 2000); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 628 (4th Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir. 1993); Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 4 (D.C. Cir. 1977). Courts in the Fifth Circuit have also adopted and applied pendent personal jurisdiction. See In re Enron Corp. Sec., 465 F. Supp. 2d 687, 705 n.30 (S.D. Tex. 2006); see also, e.g., Rolls-

Royce Corp., 576 F. Supp. 2d at 783; Conwill, 2009 WL 5178310, at *8; Oblio Telecom Inc. v. Patel, __ F. Supp. 2d __, 2008 WL 4936488, at *5 (N.D. Tex. Nov. 18, 2008).

The exercise of pendent personal jurisdiction is within the Court's discretion, and depends on whether the state law claims arise out of the same nucleus of operative fact as the RICO claim, which gives rise to personal jurisdiction. Rolls-Royce Corp., 576 F. Supp. 2d at 784 ("[I]f plaintiff's remaining claims arise out of the same nucleus of operative fact as its RICO claims it is within the court's discretion to exercise pendent personal jurisdiction over them."). In this case, there is little doubt that all claims arise from the same nuclear of operative facts: all claims derive from Defendants' alleged fraudulent scheme involving the sale of manufactured homes, fraudulent signatures and notarizations, and the continued collection of loan repayments despite filing releases stating that the loans had been "paid in full." (D.E. 1 at 2-7.) The RICO and non-RICO based claims are very closely related. This Court will therefore, in its discretion, exercise pendent personal jurisdiction over Defendant Clayton with respect to Plaintiff's non-RICO claims.

Based on the foregoing discussion, the Court concludes that it has personal jurisdiction over Defendant Clayton for all of Plaintiff's causes of action, and DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.E. 12.)

    **B.**    **Defendants' Rule 12(b)(6) or Rule 12(e) Motion (D.E. 5, 13)**

        **1.**    **Applicable Law**

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 n.8 (5th Cir. 2009). Federal Rule of Civil Procedure 9(b) provides, "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case. At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003); see also Kanneganti, 565 F.3d at 186.

The Fifth Circuit has explained, "[i]n cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology,' but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after Twombly must make relief plausible, not merely conceivable, when taken as true." Kanneganti, 565 F.3d at 186 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Where a plaintiff has alleged fraud against multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Thornton v. Micrografx, Inc., 878 F. Supp. 931, 938 (N.D. Tex. 1995).

### 2. Fraud Claims are Insufficient

Defendants argue that the Complaint insufficiently alleges "the who, what, where, when and why" of the predicate fraudulent acts for the RICO claims. Defendants claim that Plaintiff has failed to specifically allege each Defendant's role in the fraud and failed "to specify what

subsections of RICO she believes were violated." (D.E. 5 at 13-17.) This Court agrees.

A review of the Complaint shows several deficiencies in Plaintiff's allegations of fraud and RICO violations. First, although Plaintiff's Complaint makes general allegations of fraud, Plaintiff fails to specify, for example, when the fraud was committed, by whom, and how that fraud affected Plaintiff. See Thornton, 878 F. Supp. at 938. Plaintiff failed to attach as exhibits the fraudulent lien releases or any other documentation that serve as a basis for the fraud allegations. In addition, Plaintiff's Complaint only provides one specific date and fails to specify when the manufactured home was sold or when the release was filed. (D.E. 1 at 1.) Second, while the Complaint makes several general allegations of fraud, it often fails to specify the role each Defendant played in the alleged scheme. For example, the Complaint states in general terms that the "Defendants filed fraudulently documents with the Jim Wells County Clerk's office [and] failed to provide a copy of or disclose in any fashion the fact that such fraudulent documents were filed." (D.E. 1 at 1.) Nor does the Complaint specify the harm that Plaintiff suffered. In fact, the Complaint does not even identify whether Plaintiff is the purchaser of the manufactured home or the owner of the property used as collateral in the purchase of the manufactured home. Third, where Plaintiff has specified certain fraudulent acts, some of these acts seem to have no apparent basis in the context of this case, such as 18 U.S.C. § 1543, forgery of passports.[2] (D.E. 1 at 14.) In short, Plaintiff has failed to plead the "particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." J.M. Huber Corp., 343 F.3d at 724.

---

[2] The Court also notes that Plaintiff fails to specify the subsections of RICO under which they are filing suit. (D.E. 1 at 13-16.) Under Rule 8(a)(2), a plaintiff must submit "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because Plaintiff fails to specify each RICO subsection under which she is bringing suit, she has not complied with the pleading requirements. See, e.g., City of Driscoll, Texas v. Saenz, 2007 WL 173232 (S.D. Tex. Jan. 17, 2007) (ordering plaintiff to replead RICO allegations stating which subsection or subsections were allegedly violated by the defendants).

### 3. Plaintiff Must Replead Fraud Claims

Plaintiff's pleading deficiencies do not, however, warrant dismissal. "While courts routinely dismiss causes of action without leave to replead when they grant motions to dismiss for failure to state a claim, there is a general consensus that plaintiffs should be provided with an opportunity to amend their complaint to meet Rule 9(b)'s requirements before ordering dismissal." Ryan v. Brookdale Int'l Sys., Inc., 2007 WL 3283655, at *7 (S.D. Tex. Nov. 6, 2007); see DB Western, Inc. - Texas v. Invista, S.A. R.L., 2009 WL 3297297, at *2 (S.D. Tex. Oct. 13, 2009) (holding that complaint did not comply with Rule 9(b), and ordering plaintiff to replead); see also U.S. ex rel. Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450, 456 (5th Cir. 2005) (finding that "dismissal with prejudice . . . was unwarranted where . . . claims were dismissed on a Rule 12(b)(6) motion based on a lack of specificity in the complaint as required by Rule 9(b)."). Federal Rule of Civil Procedure 15(a) "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept[s] the principle that the purpose of pleading is to facilitate a proper decision on the merits." Ryan, 2007 WL 3283655 at *7. Thus, "there is a strong presumption in favor of granting leave to amend." Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006). In light of these considerations, the Court will provide Plaintiff an opportunity to amend their pleading with respect to their common law fraud claims and fraud based RICO claims to comply with the pleading standards established in Federal Rules of Civil Procedure 8(a) and 9(b). Plaintiff must file an Amended Complaint no later than April 28, 2010.

### 4. RICO Case Statement

Although Plaintiff's fraud based RICO claims contain certain deficiencies and must be repled, the Court must decline Defendants' request to require Plaintiff to file a RICO Case

Statement. (D.E. 5 at 19-23.)

In certain cases, a court will require a plaintiff alleging violations of RICO to file a RICO Case Statement after the filing of a complaint. See, e.g., Local Rules, United States District Court for the Southern District of Florida, Rule 12.1 (requiring RICO Case Statement thirty days after filing); RICO Standing Order, United States District Court for the Eastern District of Louisiana (requiring RICO statement twenty days after entry of Standing Order). The contents of the RICO Case Statement vary depending on the court or the District, but generally include specifics "regarding the time, place or manner of specific actions" taken by Defendants giving rise to the RICO claim. Brown v. Coleman Investments, Inc., 993 F. Supp. 416, 427 (M.D. La. 1998); see, e.g., Local Rules, United States District Court for the Southern District of Florida, Rule 12.1; RICO Standing Order, United States District Court for the Eastern District of Louisiana.

A case statement "is a useful, sometimes indispensable, means to understand the nature of the claims asserted and how the allegations satisfy the RICO statute." Marriott Bros. v. Gage, 911 F.2d 1105, 1107 (5th Cir. 1990) (citing Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989); Old Time Enters. V. Int'l Coffee Corp., 862 F.2d 1213 (5th Cir. 1989)). When required, a RICO Case Statement is "filed pursuant to counsel's Fed. R. Civ. P. 11 obligation to make a reasonable investigation of the facts underlying his complaint." Clark v. Douglas, 2008 WL 58774, at *3 (5th Cir. Jan. 4, 2008); Chapman & Cole v. Itel Container Int'l, 865 F.2d 676, 685 (5th Cir. 1989).

In this case, Defendants argue that the Complaint "fails to assert any matter with specificity but rather relies solely upon allegations against all of the 'Defendants' and asserts that all of them conspired to file releases of liens. The Complaint does not explain how these actions

harmed Plaintiff." (D.E. 5 at 20.) Defendants cite many different decisions around the nation that have required RICO case statements. (D.E. 5 at 20 & n.5.) Defendants contend that the Complaint has multiple shortcomings when compared to the usual level of specificity required by a RICO Case Statement, and conclude that Plaintiff "should be required to submit a RICO case statement that would provide some detail – some allegations of the who, what, when, where and how – for her serious allegations of fraud underpinning a RICO violation." (D.E. 5 at 22.)

Unlike other local rules, the Southern District of Texas Local Rules do not require a RICO Case Statement, and few cases within this District have ordered the filing of a formal RICO Case Statement, even though in some instances they have ordered repleading of RICO claims. See Saenz, 2007 WL 173232, at *8 (repleading of RICO claims); Porter v. Shearson Lehman Bros., Inc., 802 F. Supp. 41, 64 (S.D. Tex. 1992) (ordering RICO Case Statement). Beyond these general considerations, the Court also notes that this is not a particularly complex RICO case. The case involves three Defendants, one Plaintiff, and several specific allegations of wrongdoing arising out of one fraudulent scheme. RICO Case Statements generally require significant details that may be unnecessary and unavailable at this stage of the proceedings, and would impose an unwarranted burden upon Plaintiff. See Local Rules, United States District Court for the Southern District of Florida, Rule 12.1 (requiring detailed responses to sixteen sets of questions); Local Rules, United States District Court for the Southern District of Georgia, Appendix (requiring detailed responses to twenty sets of questions); RICO Case Standing Order, Northern District of Texas (requiring detailed responses to twenty sets of questions). In short, the Court does not see the need for a RICO Case Statement here.

Given the foregoing considerations, the Court must deny Defendants' request for a RICO Case Statement in this action. (D.E. 5 at 19-23.)

**V.     Conclusion**

For the reasons stated above, the Court DENIES Defendant Clayton's Rule 12(b)(2) Motion. (D.E. 12.)  The Court DENIES IN PART and GRANTS IN PART Defendants' Rule 12(b)(6) or Rule 12(e) Motion without prejudice. (D.E. 5, 13.) The Court ORDERS Plaintiff to file an amended pleading that complies with the requirements of Rule 9(b) and Rule 8(a) by April 28, 2010.[3]

SIGNED and ORDERED this 6th day of May, 2010.

_____
Janis Graham Jack
United States District Judge

---

[3] Plaintiff has already submitted an Amended Complaint. (D.E. 24.)  Upon review of the Amended Complaint, the Court concludes that it complies with the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b).